(116 So. 149)
**FURST et al. v. SHOWS.   (4 Div. 338.)**

Supreme Court of Alabama. March 22, 1928.

1. **Appeal and error ⟷1005(1)—That evidence is sufficient to take issue to jury does not relieve appellate court from determining on whole evidence whether verdict should stand.**

In action on contract of guaranty in which testimony was sufficient to take issue of payment to jury, it remained for court to determine on whole evidence in connection with jury's finding whether verdict should be allowed to stand as best attainable expression of justice.

2. **Guaranty ⟷91—In creditor's action on contract of guaranty, verdict for defendants on issue of payment held contrary to evidence.**

In action by creditor on contract of guaranty in which defendants plead payment by debtor, verdict for defendants on such issue *held* contrary to great weight of evidence, in view of testimony of debtor as to payments he made.

3. **Appeal and error ⟷999(1)—Supreme Court will revise verdict where it reaches clear conclusion that verdict is wrong.**

Supreme Court does not renounce its duty nor neglect its power to revise verdicts of ju-

ries and conclusions of trial judges on questions of fact where in its opinion, after making all proper allowances and indulging all reasonable intendments in favor of court below, it reaches clear conclusion that finding and judgment are wrong.

**4. Account stated ⊜⟞6(2)—Where debtor retains account presented by creditor for unreasonable time without objection, silence is implied admission of justice of debt.**

Where an account is presented by creditor to debtor and latter retains it unreasonable length of time without objection, his silence will ordinarily be treated as implied admission of justice of debt.

**5. Guaranty ⊜⟞89—In creditor's action on contract of guaranty; debtor held to have burden to prove payment.**

In action on contract of guaranty by creditor for amount due from debtor, burden of proof as to payments by debtor *held* to be on him.

Appeal from Circuit Court, Crenshaw County; Arthur E. Gamble, Judge.

Action on a contract of guaranty by Frank E. Furst and Fred G. Thomas, doing business as Furst & Thomas, against Mary. Shows, as executrix of the will of T. W. Shows, deceased, and J. H. Shows. From a judgment for defendants, plaintiffs appeal. Reversed and remanded.

E. S. Thigpen, of Andalusia, and Calvin Poole, of Greenville, for appellants.

The law applicable to this case, as to the right of plaintiffs to recover, as to the validity of the guaranty contract sued on, and as to the sale of extracts, is fully settled and determined by the decision on former appeal. Furst v. Shows, 215 Ala. 133, 110 So. 299; Scharnagel v. Furst, 215 Ala. 528, 112 So. 102. The burden of proof of payment is on the defendant. Bank v. Montgomery Co., 211 Ala. 551, 101 So. 186; Robinson v. Smith, 207 Ala. 378, 92 So. 546. This court should render judgment for plaintiffs. Code 1923, § 6124.

Frank B. Bricken, of Luverne, and Powell & Hamilton, of Greenville, for appellee.

The trial judge had the opportunity of hearing the testimony of the witness, of observing their demeanor on the stand, and also the opportunity of determining whether or not the action of the jury should be sustained. The motion for new trial was properly overruled. Furst v. Shows, 215 Ala. 133, 110 So. 299; Cobb v. Malone, 92 Ala. 630, 9 So. 738; Jackson Lumber Co. v. Trammell, 199 Ala. 545, 74 So. 469.

SAYRE, J. This cause was here on a former appeal. Furst v. Shows, 215 Ala. 133, 110 So. 299. The issues then were substantially the issues now, and the statement of the case there made will suffice for the purposes of the present appeal.

Conceding that the question whether appellants sold the lemon and orange extracts to D. O. Shows with notice that he intended to resell them for use as intoxicating beverages was one for jury decision, that defense, if sustained in the evidence, did not go to the entire account between the parties; and the other question of payment vel non remained to be determined on consideration of the evidence relevant to that issue.

[1-3] It is again conceded that there was testimony which properly took the issue of payment to the jury. As to that, it was proper, in the first place, to take the verdict of the jury; but at last it remained for the court to determine, upon the whole evidence in connection with the jury's finding, whether the verdict should be allowed to stand as the best attainable expression of justice between the parties. The record in this case has had due consideration, and we are constrained to hold that the verdict should have been set aside on plaintiffs' motion to that end on the ground that it was contrary to the great weight of the evidence. It is a matter of no great difficulty, when such questions come to this court for review, to place the decision on the ground that the trial judge, who hears the witnesses and observes their demeanor on the stand, has a better opportunity than this court can have to judge the proper weight and credibility of oral testimony, and in the great majority of cases that solution is the best available. "But this court has not renounced its duty nor neglected its power to revise the verdicts of juries and the conclusions of trial judges on questions of fact, where, in our opinion, after making all proper allowances and indulging all reasonable intendments in favor of the court below, we reach a clear conclusion that the finding and judgment are wrong." Twinn Tree Lumber Co. v. Day, 181 Ala. 569, 61 So. 915.

We state in brief outline the reasons for our conclusion on this case. Witnesses for plaintiffs, appellants, who had no apparent interest except that they were employed by plaintiffs in their business, testified to the correctness of the account in suit and to payments due to be credited to D. O. Shows. Their testimony, after eliminating all items of lemon and orange extract, showed a balance of a large amount due from D. O. Shows to plaintiffs on account of articles of merchandise free from any possible offense against the state or federal prohibition laws. D. O. Shows was the sole witness on this point. But he made so lame and impotent a showing that, as already stated, we feel constrained to hold that the trial court erred in overruling the motion for a new trial. D. O. Shows, after February 13, 1919, the date of

the contract under which he operated, had from time to time received the goods shown by plaintiffs' statement of account. On May 20, 1921, plaintiffs, responding to a letter from Shows complaining of hard times, closed the contract as they had a right to do under its terms, and informing Shows that they were notifying his guarantors, and giving them a statement of the balance owing to them on the account. This letter does not state the amount of the balance due, but there is not the slightest reason to doubt that it informed the witness and his guarantors, who are the defendants in this case, by inclosed statements of the amount then claimed, and now alleged, to be due. Plaintiffs put in evidence copies of letters written by them to the witness in August, September, October, and November, 1921, one acknowledging a credit of $33.62 for goods returned, and all stating the balance claimed in agreement with plaintiffs' evidence in this case. These letters were properly addressed and mailed and showed plaintiffs' return address on the outside of the inclosing envelope. There was no answer to any of them. The witness would not say that he had answered them or any of them. He admitted that he had received some of them, but would not admit that he had received all of them.

[4] It is a familiar rule of law that where an account is presented by a creditor to a debtor, and the latter retains it an unreasonable length of time without objection, his silence will ordinarily be treated as an implied admission of the justice of the debt, the inference of its correctness being more or less strong according to the circumstances of the particular case. Hirschfelder v. Levy, 69 Ala. 353. That rule obtains in this case with peculiar force because plaintiffs' statement of the amount due and their demand for a settlement were repeated time and again during several months without answer. However, in September the witness signed and sent to plaintiffs a card, which plaintiffs had sent him for the purpose, showing the amount of his indebtedness. The original is sent here for inspection. It shows a statement of D. O. Shows' indebtedness as being $1,242.65, and, evidently, was procured in anticipation of just such a situation as now confronts plaintiffs. Shows' explanation of this item of evidence, which would be conclusive of this case unless explained, is that the statement is a forgery for that after he had signed and returned to plaintiffs the figure "1" was prefixed, thereby increasing his admission of indebtedness by the sum of $1,000. As before stated, the witness does not challenge the items of debit shown by the statement of account in evidence, nor does he dispute the proper date of the admission of indebtedness which was dated September 18, 1920, and purported to state the total of indebtedness as of July 1, 1920. All this means, if defendants' theory of forgery be well founded in fact, that D. O. Shows had paid an even thousand dollars more than he had credit for, though the account in evidence showed more than 50 payments—all which defendants hold to be properly credited—of amounts aggregating $1,030.97, covering the period between the inception of the account, viz., February 13, 1919, and March 8, 1921, notwithstanding the fact that the contract was canceled May 20, 1921, as stated above, after which, according to plaintiffs' case at least, D. O. Shows wholly failed to answer communications demanding payment, and notwithstanding the further fact that, in reply to plaintiffs' notice of cancellation, D. O. Shows protested that at that season of the year it was impossible to collect his accounts against farmers, his customers, and begged for an extension of the life of the contract. In this connection it is to be noted also that on May 20, 1921, plaintiffs notified T. W. Shows—now appearing by his administrator—and J. H. Shows, defendant guarantors, of the cancellation of the contract and demanded payment of the sum now in controversy without reply from any of them.

[5] Nor have defendants any evidence, other than the statement of D. O. Shows, of the alleged fact that he paid plaintiffs' account in full. He claims to have paid by checks on some bank—what bank he would not say. He would not affirm that he had money in any bank other than that of his brother and guarantor, T. W. Shows, at Luverne, the place where this case was tried, or another bank doing business at the same place. He could not recall the date or amount of any check nor the bank on which any check was drawn. No checks were produced; nor was the record of his account with any bank—this, though the burden of proof as to payment was on him, and that issue had, on one former trial at least, been actively litigated, and witnesses for plaintiffs had denied the payments in question. D. O. Shows sought to account for this state of things by saying that he and his wife had gone over the checks—returned checks, we understand him to mean—and that they had been kept in a trunk which had been destroyed with its contents when his house was burned, but he was unable to recall the date of that misfortune further than that it was after the date of the cancellation of his contract with plaintiffs—at least he thought that to have been the case. If the debt of plaintiffs had been paid in full, overpaid by $7, as defendants contended, we are unable to understand how, consistently with any reasonable conception of human conduct in the circumstances shown, the defense would have been allowed to rest upon the vague and unsatisfactory testimony of D. O. Shows, or why the assertion of payment in full should not have been more opportunely made in answer to de-

mands for payment at a time when he had the evidence of it in his keeping or close at hand—nothing of which can now avail defendants anything in the absence of his assertion that plaintiffs have been guilty of forgery with all its ugly intendments which reflect not upon D. O. Shows alone.

Upon the whole case we are of opinion that plaintiffs' motion for a new trial should have been granted, and, because that motion was overruled, the judgment is reversed and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.